Surisa Rivers, State Bar No. 250868
surisa@riverslawinc.com
RIVERS LAW, INC, APC
2529 Foothill Blvd. Suite 202
La Crescenta, CA 91214
Phone: (818) 330-7012
Fax: (213) 402-6077

Wilmer J. Harris, State Bar No. 150407
wharris@sshhlaw.com
SCHONBRUN SEPLOW HARRIS & HOFFMAN, LLP
715 Fremont Avenue, Suite A
S. Pasadena, CA 91030
Phone: (626)441-4129
Fax: (626)283-5770
wharris@sshhlaw.com

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLISA WARE, through her guardians ad litem, MONTE AND DENISE WARE, | CASE NO. 2:15-cv-8124-DMG-SKx |
| Plaintiff, | **PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR SUMMARY ADJUDICATION ON PLAINTIFF'S FIRST, SECOND AND THIRD CLAIMS FOR RELIEF, OR, IN THE ALTERNATIVE, FOR SPECIFICATION OF MATERIAL FACTS WITHOUT SUBSTANTIAL CONTROVERSY; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| vs. | |
| ANTELOPE VALLEY UNION HIGH SCHOOL DISTRICT; BRUCE GARVER; AND SUPERINDENDENT, DAVID J. VIERRA, and DOES 1-10, | |
| Defendants. | Date:  March 23, 2018
Time: 3:00 p.m.
Place: Courtroom 8C

Hon. Dolly M. Gee
United States District Judge |

TO DEFENDANTS AND THEIR ATTORNEYS OF RECORD:

Please take notice that, on March 23, 2018 at 3:00 p.m., in Courtroom 8C of the United States District Courthouse, located at 350 West 1st Street, Los Angeles, California, 90012, PLAINTIFF CARLISA WARE will and hereby does move the Court for an Order granting summary adjudication in favor of PLAINTIFF CARLISA WARE against defendant Antelope Valley Union High School District on her First Claim for Relief (pursuant to the Americans with Disabilities Act), her Second Claim for Relief (pursuant to Section 504 of the Rehabilitation Act) and her Third Claim for Relief (pursuant to the Unruh Act, Cal. Civ. Code § 51). In the alternative, PLAINTIFF CARLISA WARE seeks specification of the following issues as being without substantial controversy:

**SPECIFICATION # 1:**

Defendant Antelope Valley Union High School District ("AVUHSD") violated 42 U.S.C. § 12101, *et seq* (the Americans with Disabilities Act) by unduly burdening Carlisa Ware's communications with AVUHSD by failing to assess Carlisa Ware in a timely fashion with respect to her need for an augmentative or alternative communication ("AAC") device.

**SPECIFICATION # 2:**

Defendant AVUHSD violated 42 U.S.C. § 12101, *et seq* (the Americans with Disabilities Act) by unduly burdening Carlisa Ware's communications with AVUHSD by failing to provide Carlisa Ware in a timely fashion with an AAC device.

**SPECIFICATION # 3:**

Defendant AVUHSD violated Section 504 of the Rehabilitation Act (29 U.S.C. § 794) by unduly burdening Carlisa Ware's communications with AVUHSD by failing to assess Carlisa Ware in a timely fashion with respect to her need for an AAC device.

///

**SPECIFICATION # 4:**

Defendant AVUHSD violated Section 504 of the Rehabilitation Act (29 U.S.C. § 794) by unduly burdening Carlisa Ware's communications with AVUHSD by failing to provide Carlisa Ware in a timely fashion with an AAC device.

**SPECIFICATION # 5:**

Defendant AVUHSD violated the Unruh Act (Cal. Civ. Code § 51 *et seq.*) by unduly burdening Carlisa Ware's communications with AVUHSD by failing to assess Carlisa Ware in a timely fashion with respect to her need for an AAC device.

**SPECIFICATION # 6:**

Defendant AVUHSD violated the Unruh Act (Cal. Civ. Code § 51 *et seq.*) by unduly burdening Carlisa Ware's communications with AVUHSD by failing to provide Carlisa Ware with an AAC device in a timely fashion.

**SPECIFICATION # 7:**

Defendant AVUHSD violated 42 U.S.C. § 12101, *et seq* (the Americans with Disabilities Act) by failing to take appropriate steps to ensure that communications with Carlisa Ware were as effective as communications with others as required by 28 C.F.R. § 35.160(a)(1).

**SPECIFICATION # 8:**

Defendant AVUHSD violated Section 504 of the Rehabilitation Act (29 U.S.C. § 794) by failing to take appropriate steps to ensure that communications with Carlisa Ware were as effective as communications with others as required by 28 C.F.R. § 35.160(a)(1).

**SPECIFICATION # 9:**

Defendant AVUHSD violated the Unruh Act (Cal. Civ. Code § 51 *et seq.*) by failing to take appropriate steps to ensure that communications with Carlisa Ware were as effective as communications with others as required by 28 C.F.R. § 35.160(a)(1).

///

**SPECIFICATION # 10:**

Defendant AVUHSD violated 42 U.S.C. § 12101, *et seq* (the Americans with Disabilities Act) by failing timely to furnish Carlisa Ware with an AAC device.

**SPECIFICATION # 11:**

Defendant AVUHSD violated Section 504 of the Rehabilitation Act (29 U.S.C. § 794) by failing timely to furnish Carlisa Ware with an AAC device.

**SPECIFICATION # 12:**

Defendant AVUHSD violated the Unruh Act (Cal. Civ. Code § 51 *et seq.*) by failing timely to furnish Carlisa Ware with an AAC device.

**SPECIFICATION # 13:**

Providing Carlisa Ware with a timely assessment of her need for an AAC device did not constitute an undue burden or hardship upon AVUHSD.

**SPECIFICATION # 14:**

Providing Carlisa Ware with an AAC device did not constitute an undue burden or hardship upon AVUHSD.

**SPECIFICATION # 15**:

AVUHSD acted with deliberate indifference when it failed to have Carlisa Ware assessed for her need for an AAC device in a timely fashion because AVUHSD had knowledge that a harm to Carlisa Ware's federally protected rights were substantially likely and, nevertheless, failed to act upon that likelihood.

**SPECIFICATION # 16:**

AVUHSD acted with deliberate indifference when it failed to provide Carlisa Ware with an AAC device in a timely fashion because AVUHSD had knowledge that a harm to Carlisa Ware's federally protected rights were substantially likely and, nevertheless, failed to act upon that likelihood.

This motion is brought on the grounds that it is undisputed that defendant AVUHSD engaged in the conduct described above and that such conduct violates PLAINTIFF CARLISA WARE's rights under the Americans with Disabilities Act,

the Rehabilitation Act and the Unruh Act.  This motion is made pursuant to Fed. R. Civ. P. 56 and Local Rule 56.  This motion is brought following the conference of counsel pursuant to Local Rule 7-3, which took place on February 9, 2018.

This Motion is supported by the accompanying Memorandum of Points and Authorities, the Declarations of Wilmer J. Harris and Denise Ware, and such other matters as may be presented at the hearing on the matter.

Dated:  February 16, 2018        RIVERS LAW, INC., APC


                                 SCHONBRUN SEPLOW
                                 HARRIS & HOFFMAN LLP



                                 By:    _/s/ Wilmer J. Harris_____
                                        Wilmer J. Harris
                                        Attorneys for Plaintiff

**TABLE OF CONTENTS**

I.    INTRODUCTION ....................................................................... 1

II.   STATEMENT OF FACTS ......................................................... 1

    A.   CARLISA WARE WAS AND IS A STUDENT WITH SEVERAL
         DISABILITIES. ................................................................... 1

    B.   CARLISA REQUIRED ASSISTIVE TECHNOLOGY DEVICES
         BEYOND THE PICTURE EXCHANGE COMMUNICATION
         SYSTEM IN ORDER TO COMMUNICATE EFFECTIVELY. ....... 2

    C.   DEFENDANT DISTRICT REFUSED TO ACCOMMODATE
         CARLISA ONCE SHE STARTED HIGH SCHOOL. ..................... 4

    D.   CARLISA DID NOT RECEIVE AN EFFECTIVE ASSISTIVE
         COMMUNICATION DEVICE IN 10TH OR 11TH GRADE. ............. 5

    E.   AVUSHD'S CALLOUS INDIFFERENCE TOWARD THEIR
         CHILD'S EDUCATION FORCED CARLISA'S PARENTS TO
         RETAIN COUNSEL. ............................................................ 6

    F.   AVUSHD DOES NOT CLAIM UNDUE BURDEN ....................... 8

    G.   AVUSHD HAS CONTINUED TO PROVIDE WARE WITH THE
         AAC COMMUNICATIONS DEVICE THROUGH THE
         PRESENT DAY. .................................................................. 8

III.  LEGAL STANDARD ............................................................ 8

IV.   ARGUMENT ....................................................................... 9

    A.   UNDISPUTED FACTS SHOW THAT THE DISTRICT FAILED
         TO ENSURE MEANINGFUL ACCESS UNDER THE
         AMERICANS WITH DISABILITIES ACT AND SECTION 504
         OF THE REHABILITATION ACT. ........................................ 9

         1.   ADA And Section 504 Prima Facie Case. ................... 9

         2.   Defendant Violated The ADA And Section 504 By Creating A
              Unique Burden On Plaintiff In Failing To Address Her Disability

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Related Needs..............................................................10

3. Defendant Also Violated The ADA And Section 504 By Failing
To Provide Reasonable Accommodations. ................................11

4. The Meaningful Access Standard Imposes Affirmative
Obligations On Defendant To Act. .............................................13

B. DEFENDANT FAILED AS A MATTER OF LAW TO PROVIDE
CARLISA WITH EFFECTIVE COMMUNICATIONS.................15

C. DEFENDANT CANNOT CLAIM UNDUE BURDEN OR
FUNDAMENTAL ALTERATION, BECAUSE THAT DEFENSE
WAS NOT PLEADED AS AN AFFIRMATIVE DEFENSE.........17

D. THE DISTRICT'S CONDUCT MEETS THE STANDARD FOR
DELIBERATE INDIFFERENCE SUFFICIENT TO WARRANT
DAMAGES. ....................................................................................17

E. A VIOLATION OF THE ADA CONSTITUTES A VIOLATION
OF THE UNRUH CIVIL RIGHTS ACT, WHICH DOES NOT
REQUIRE ANY SHOWING OF DELIBERATE INDIFFERENCE.18

V. CONCLUSION .......................................................................................19

# TABLE OF AUTHORITIES

***Federal Cases***

*Alexander v. Choate*,

    469 U.S. 287 (1985)..................................................................................9, 10, 12

*Am. Council of the Blind v. Paulson*,

    525 F.3d 1256 (D.C. Cir. 2008).............................................................17

*Anderson v. Liberty Lobby, Inc.*,

    477 U.S. 242 (1986)..................................................................................8

*Brooklyn Ctr. for Indep. of Disabled v. Bloomberg*,

    980 F. Supp. 2d 588 (S.D.N.Y. 2013) ..................................................17

*Cedar Rapids Cmty. Sch. Dist. v. Garret F. ex rel. Charlene F.*,

    526 U.S. 66 (1999)....................................................................................7

*Celotex Corp. v. Catrett*,

    477 U.S. 317 (1986)..................................................................................8

*City of Canton, Ohio v. Harris*,

    489 U.S. 378 (1989)................................................................................18

*Cohen v. City of Culver City*,

    754 F.3d 690 (9th Cir. 2014) .........................................................17, 19

*Communities Actively Living Indep. & Free v. City of Los Angeles*,

    No. CV 09-0287 CBM RZX, 2011 WL 4595993 (C.D. Cal. Feb. 10, 2011) .10, 14

*Crowder v. Kitagawa*,

    81 F.3d 1480 (9th Cir. 1996) .........................................................10, 11

*Delano-Pyle v. Victoria Cty., Tex.*,

    302 F.3d 567 (5th Cir. 2002) .................................................................14

*Dopico v. Goldschmidt*,

    687 F.2d 644 (2d Cir. 1982) ..................................................................14

*Dunlap v. Ass'n of Bay Area Governments*,

    996 F. Supp. 962 (N.D. Cal. 1998)........................................................12

*Duvall v. Cty. of Kitsap,*

   260 F.3d 1124 (9th Cir. 2001) ........................................................ passim

*Henrietta D. v. Bloomberg,*

   331 F.3d 261 (2d Cir. 2003) ..........................................................14, 17

*K.M. ex rel. Bright v. Tustin Unified Sch. Dist.,*

   725 F.3d 1088 (9th Cir. 2013) ...........................................................15

*Kiman v. New Hampshire Dep't of Corr.,*

   451 F.3d 274 (1st Cir. 2006)..............................................................14

*Lentini v. California Ctr. for the Arts, Escondido,*

   370 F.3d 837 (9th Cir. 2004) .............................................................17

*Lovell v. Chandler,*

   303 F.3d 1039 (9th Cir. 2002) .........................................................9, 18

*Mark H. v. Lemahieu,*

   513 F.3d 922 (9th Cir. 2008) .............................................................17

*McGary v. City of Portland,*

   386 F.3d 1259 (9th Cir. 2004) ........................................................12, 13

*Nicole M. By & Through Jacqueline M. v. Martinez Unified Sch. Dist.,*

   964 F. Supp. 1369 (N.D. Cal. 1997)......................................................18

*Olmstead v. L.C. ex rel. Zimring,*

   527 U.S. 581 (1999).......................................................................13

*Parker v. Universidad de Puerto Rico,*

   225 F.3d 1 (1st Cir. 2000)..............................................................13

*Presta v. Peninsula Corridor Joint Powers Bd.,*

   16 F. Supp. 2d 1134 (N.D. Cal. 1998)..................................................12

*Reed v. LePage Bakeries, Inc.,*

   244 F.3d 254 (1st Cir. 2001)...........................................................14

*Rodde v. Bonta,*

   357 F.3d 988 (9th Cir. 2004) .........................................................9, 11

*Theriault v. Flynn*,

   162 F.3d 46 (1st Cir. 1998)...................................................................9

*Vinson v. Thomas*,

   288 F.3d 1145 (9th Cir. 2002) ..........................................................9

*Weinreich v. Los Angeles Cty. Metro. Transp. Auth.*,

   114 F.3d 976 (9th Cir. 1997) ............................................................9

*Wisconsin Cmty. Servs., Inc. v. City of Milwaukee*,

   465 F.3d 737 (7th Cir. 2006) ..........................................................14

*Wong v. Regents of Univ. of California*,

   192 F.3d 807 (9th Cir. 1999) ..........................................................12

**State Cases**

*Munson v. Del Taco, Inc.*,

   46 Cal. 4th 661 (2009) .....................................................................19

**Federal Statutes**

20 U.S.C. § 1401(1) ..............................................................................2

20 U.S.C. § 1412(a)(12)(B)(ii) ...........................................................7

20 U.S.C. § 1414(a) .............................................................................5

20 U.S.C. § 1414(a)(2)(B)(ii) .............................................................5

20 U.S.C. § 1414(b)(3)(B) ..................................................................5

**State Statutes**

Cal. Civ. Code § 51(f)........................................................................18

Cal. Educ. Code § 56043(f)(1) ...........................................................5

Cal. Educ. Code § 56043(k) & 56381 ................................................5

**Federal Rules**

Fed. R. Civ. P. 8(c) ...........................................................................17

Fed. R. Civ. P. 56...........................................................................4, 8

Fed. R. Civ. P. 56(a) ...........................................................................9

Fed. R. Civ. P. 56(a), (c)......................................................................8

Fed. R. Civ. P. 56(g) ...................................................................................9

***Federal Regulations***

28 C.F.R. § 35.130(b)(7) ......................................................................12, 17

28 C.F.R. § 35.160 ....................................................................................15

28 C.F.R. § 35.160(a)(1) ........................................................................2, 15

28 C.F.R. § 35.160(b)(1) .............................................................................15

34 C.F.R. § 300.103(c) ................................................................................7

## I.      INTRODUCTION

Plaintiff Carlisa Ware is a 20-year-old student with a well-documented history of Cerebral Palsy and asthma.  Defendant Antelope Valley Union High School District ("AVUHSD") was on notice of Ms. Ware's disabilities, many of which were observable and all of which were set forth in detail in the many IEPs in their possession submitted on her behalf.  Despite knowing Ms. Ware has a severe speech impairment and is unable to communicate verbally, Defendant failed to conduct an assessment of her disabilities and failed to provide Carlisa with an appropriate communication aid to allow for effective communication.  These failures by Defendants denied Carlisa meaningful access to her educational program as a matter of law.

Such conduct violates both the letter and spirit of the Americans with Disabilities Act, Section 504 of the Rehabilitation Act and the Unruh Act, all of which require AVUHSD to ensure meaningful access to and provide reasonable accommodations in its educational programs.  Undisputed evidence proves that AVUHSD knew of Ms. Ware's need for a communications assessment as well an appropriate communication device, but failed to provide either for the majority of her time in high school. For these reasons, and as explained more fully below, Plaintiff asks for a finding of liability as a matter of law under her first, second and third claims for relief.

## II.     STATEMENT OF FACTS

## A.      CARLISA WARE WAS AND IS A STUDENT WITH SEVERAL DISABILITIES.

Plaintiff Carlisa Ware ("Plaintiff") is a 20 year-old student. (Plaintiff's Separate Statement of Uncontroverted Facts and Conclusions of Law, filed concurrently, "UMF," # 1.) During the fall of the 2011-2012 school year, Carlisa began attending Lancaster High School within AVUHSD. (UMF # 2.) At that time, she was in ninth grade.  (UMF # 3.)  Carlisa has been receiving special education

services since 1999 with an eligibility of orthopedic impairment and Speech or Language Impairment. (UMF # 3.) Carlisa has been diagnosed with Cerebral Palsy and Asthma. (UMF # 4.) Cerebral Palsy includes one of a number of neurological disorders that appear in infancy or early childhood and permanently affect body movement and muscle coordination. (UMF # 5.) As a result of her Cerebral Palsy, Carlisa has a severe impairment in speech and language as well as cognitive impairments. (UMF # 6.) Plaintiff is able to walk and run, but she requires assistance toileting and wears a diaper under her clothes to school. (UMF # 7.) She also cannot ingest any food and requires a feeding (gastronomy) tube. (UMF # 8.) Significantly, Carlisa is nonverbal. (UMF # 9.) Accordingly, Carlisa is clearly a qualified individual with a disability within the meaning Title II of the ADA, Section 504 of the Rehabilitation Act and the Unruh Act.

**B.      CARLISA REQUIRED ASSISTIVE TECHNOLOGY DEVICES[1] BEYOND THE PICTURE EXCHANGE COMMUNICATION SYSTEM IN ORDER TO COMMUNICATE EFFECTIVELY.**

Because Carlisa cannot speak, she requires assistive technology to access the benefits of a public education.  In middle school at the Linda Verde Center, Carlisa used an augmentative and alternative communication devices ("AACs")[2] to increase

---

[1] The term "assistive technology device" means any item, piece of equipment, or product system, whether acquired commercially off the shelf, modified, or customized, that is used to increase, maintain, or improve functional capabilities of a child with a disability. 20 U.S.C. § 1401(1).

[2] AACs include devices that require some form of external support, such as a communication board with visual-graphic symbols (i.e., pictures, photographs, line drawings, Blissymbols, printed words, traditional orthography) or computers, handheld devices, or tablet devices with symbols, words, letters, or icons that "speak" through synthetically produced speech or recorded natural (digitized) speech. Found at https://www.asha.org/NJC/AAC/.  *See* Request for Judicial Notice, filed and served concurrently herewith.

her functional communication skills. (UMF # 10.)

There can be no dispute that depriving a nonverbal child of effective communication cuts that child off from the benefits of a public education:

> The ability to communicate is one of the most basic of human needs; allowing Student an effective means to express herself supports her human dignity. Every minute of every school day, communication is the key to social, emotional, functional, and academic progress. [The] failure to timely and completely assess Student's communication needs and implement her agreed-upon communication devices prevented Student from being provided with an effective means to communicate . . . . During this time, Student lost the benefit of a speech-generating device and augmentative alternative communication services.

(Declaration of Wilmer J. Harris, "Harris Decl.," ¶ 11, Exh. R: *Guardian on Behalf of Student v. Vacaville Unified School District*, OAH Case No. 2015090255 (May 2, 2016) at 44-45, ¶ 4.)

In the year prior to her enrollment at Lancaster High School, Carlisa had effective communication accommodations in the form of the picture exchange communication system ("PECS") book and an additional AAC device (Springboard). (UMF # 11.) PECS is a book with pictures that aims to allow a nonverbal student to communicate wants and needs such as food, need for restroom access or pain. (UMF # 12.) Defendant's 30(b)(6) designee described Springboard as an augmentative alternative communication device with a touchscreen suitable for use with academic activities. (UMF # 13.)

The same designee, Elsa Balcazar, was Carlisa's eighth grade teacher who reported that Carlisa liked to learn new topics and engaged in various kinds of activities using Springboard AAC.  AVUHSD's designee also admitted that Carlisa should have continued use of an AAC device such as Springboard in high school. (UMF # 14.)

1

2

## C.   DEFENDANT DISTRICT REFUSED TO ACCOMMODATE CARLISA ONCE SHE STARTED HIGH SCHOOL.

3    AVUSHD provides services to persons with disabilities, including persons

4 such as Carlisa Ware who suffer from cerebral palsy. (UMF # 15.) An assessment of

5 a student with disabilities is an essential first step in determining what

6 accommodations that student will require in order to have meaningful access to the

7 benefits of a public education. (UMF # 16.)

8    From August 2011 to October 2014, Plaintiff attended Lancaster High School

9 ("LHS") within Defendant District, in a Special Day Class for students with Severe

10 Disabilities (SDC/SDD).  (UMF # 17.) However, AVUHSD did not provide an AAC

11 (other than the PECS book she got in middle school) for Carlisa during the entire

12 time she attended Lancaster High School, from the beginning of her ninth grade year

13 (2011-2012 school year) until she transferred to Quartz Hill High School after the

14 beginning of her 12th grade year (2014-2015).  (UMF # 18.)

15    Carlisa's teacher at Lancaster High was Defendant Bruce Garver ("Defendant

16 Garver"). (UMF # 19.) Garver is a special education teacher with a certificate in

17 severe developmental delay. (*Id.*) Garver was also Carlisa's "case carrier," i.e. he

18 was the person responsible for Carlisa's educational needs in the classroom.  (Harris

19 Decl., ¶ 1, Exh. H: Deposition of Bruce Garver, "Garver Depo," at 26:17-27:8.)

20    Garver noted that communication with Carlisa was not effective with the

21 PECS book. (UMF # 20.) Garver correctly testified that if one accommodation is

22 not effective, it is appropriate to keep trying to find an alternative to allow the

23 student with disabilities to progress. (UMF # 21.)

24    Carlisa's first IEP meeting at LHS did not take place until March 26, 2012,

25 during the Spring semester of her freshman year. (UMF # 22.) As a result of the lack

26 of progress with the PECS book, Garver recommended at the March 26, 2012 IEP

27 meeting that Carlisa be assessed to determine whether her communication

28 impairments could be addressed by a voice activated communication board device.

(UMF # 23.)

AVUHSD, through its 30(b)(6) designee, has made critical admissions that support the granting of the instant motion.  Specifically, AVUHSD admitted it has no evidence that Carlisa Ware's IEP Team ever discussed Garver's recommendation that Carlisa be assessed for a communications device.  (UMF # 24.)  Moreover, AVUHSD admits that it has no evidence that Carlisa Ware's IEP Team considered Garver's recommendation that Carlisa be assessed for a communications device. (UMF # 25.) The upshot of this IEP meeting was as follows:  Carlisa Ware did not receive the communication device Garver recommended while she was in 9th grade, the 2011-2012 school year.  (UMF # 26.)

The 2012 IEP happened to be Carlisa' triennial evaluation.  (UMF # 27.) A student receiving special education services is entitled to a comprehensive triennial assessment (re-evaluation of the student with disabilities once every three years), which must assess her in all areas of suspected disability.  20 U.S.C. § 1414(a)(2)(B)(ii); 20 U.S.C. § 1414(b)(3)(B); *see also* Cal. Educ. Code § 56043(k) & 56381. Once the parent signs the assessment plan for the triennial assessment, the District has 60 days to complete the triennial assessment and hold an IEP meeting to review the results. *See* Cal. Educ. Code § 56043(f)(1); *see also* 20 U.S.C. § 1414(a). Despite the mandate to conduct a thorough assessment of Carlisa's communication needs, AVUHSD failed to conduct the requested AAC assessment, and failed once again to provide her with effective communication.

### D.   CARLISA DID NOT RECEIVE AN EFFECTIVE ASSISTIVE COMMUNICATION DEVICE IN 10TH OR 11TH GRADE.

Garver reiterated in Carlisa's 2013 IEP that her communication with the PECS book was ineffective. (UMF # 28.) Once again, AVUHSD failed to assess Carlisa for additional assistive technologies and failed to provide effective communication devices. (UMF # 29.)

Two years after Garver's initial recommendation to assess Carlisa for

1  assistive technology, in March 2014, Garver specifically recommended that

2  AVUSHD provide Carlisa with an AAC.  (UMF # 30.) Notably, Garver suggested

3  that AVUHSD provide Carlisa with a nine button AAC to help improve her

4  functional communication.  (UMF # 31.)

5       As in the previous two years, defendant District refused to provide Carlisa

6  with an AAC assessment during the 2013-2014 school year, while she was in 11th

7  grade.  (UMF # 32.) As before, AVUHSD, through its 30(b)(6) designee, admitted it

8  has no evidence that any member of Carlisa Ware's IEP Team disagreed with

9  Garver's recommendation that AVUHSD provide Carlisa with an AAC device.

10  (UMF # 33.) Markedly, it is undisputed that AVUHSD neither assessed Carlisa

11  Ware for an AAC device, nor provided her with an AAC device (other than the

12  PECS book previously deemed ineffective) as a result of the 2014 IEP. (UMF # 34.)

13  **E.   AVUSHD'S CALLOUS INDIFFERENCE TOWARD THEIR**

14  **CHILD'S EDUCATION FORCED CARLISA'S PARENTS TO**

15  **RETAIN COUNSEL.**

16       In November 2014, Carlisa was moved to Quartz Hill High School pursuant

17  to her parents' request.  (UMF # 35.) Carlisa's parents requested a transfer after

18  abuse allegations against defendant Garver came to light. (UMF # 36.) By the

19  middle of her 11th grade year, AVUSHD had still not assessed Carlisa for

20  communication device accommodation.  (UMF # 37.) Indeed, the District was

21  repeatedly and blatantly ignoring her teacher/case carrier's recommendations that

22  she be assessed for, and provided with, an AAC device.  Carlisa's parents were now

23  forced to retain counsel on her behalf. (UMF # 38.)

24       On December 11, 2014, Carlisa's attorney, Surisa Rivers, sent a letter to the

25  District, requesting it to assess Carlisa for an AAC accommodation.  (UMF # 38.)

26       Jody Sharp is a Teacher on Special Assignment at Quartz Hill who was

27  assigned to Carlisa upon her transfer to Quartz Hills. (UMF # 39.)  Ms. Sharp

28  received the demand letter from Ms. Rivers shortly after it was sent.  Ms. Sharp

1   stated she had no reason to disagree with the December 11, 2014 request to assess

2   Carlisa.  (UMF # 40.) The purpose of the assessment was to determine whether a

3   communications device would improve Carlisa's functional communication.  (UMF

4   # 41.)

5        Strikingly, it was not until March 2015 that AVUHSD engaged Goodwill of

6   Orange County, through its Assistive Technology Exchange Center ("ATEC") to

7   conduct the communications assessment of Carlisa Ware.  (UMF # 42.)  Goodwill

8   of Orange is one of AVUHSD School Board's approved outside vendors for

9   performing assessments.   (UMF # 43.)

10        On May 26, 2015, Goodwill of Orange County recommended that Carlisa

11   Ware should be provided with a communication device, specifically an Ipad with a

12   specialized communications program (Proloquo) on it.  (UMF # 44.) AVUHSD

13   ignored its statutory duty to complete the 2015 triennial evaluation within the

14   required 60 days after receiving the ATEC assessment.

15        Sadly, the District did not meet until October 2015 to review Goodwill's

16   report and implement the recommendations. (UMF # 45.) The IEP Team approved

17   the AAC device for Carlisa at this meeting.  (UMF # 46.) However, it was not until

18   March 2016 that Defendant District finally provided Carlisa with the AAC device

19   and services.  (UMF # 47.)

20        Nor can AVUHSD shirk responsibility for its failure to provide Carlisa with

21   effective communication in a timely manner:  The financial responsibility for

22   serving students lies with districts, not outside funding sources. *Cedar Rapids Cmty.*

23   *Sch. Dist. v. Garret F. ex rel. Charlene F.*, 526 U.S. 66, 77 (1999). The state must

24   ensure that there is no delay in implementing a child's IEP, even while the payment

25   source for providing or paying for special education and related services to the child

26   is being determined. (34 C.F.R. § 300.103(c).) In addition, the school district must

27   provide and pay for special education and related services not provided by another

28   agency. 20 U.S.C. § 1412(a)(12)(B)(ii).

### F.   AVUSHD DOES NOT CLAIM UNDUE BURDEN

AVUSHD has not asserted "undue burden" as a defense it its answer.  In addition, AVUHSD does not contend that providing Carlisa Ware the assessment Garver recommended during the 2011-2012 school year constituted an undue burden or expense.  (UMF # 49.) Nor does AVUHSD contend that providing Carlisa Ware the communication device Garver recommended during the 2013-2014 school year constituted an undue burden or expense.  (UMF # 50.)

### G.   AVUSHD HAS CONTINUED TO PROVIDE WARE WITH THE AAC COMMUNICATIONS DEVICE THROUGH THE PRESENT DAY.

Carlisa Ware used the communications device she received on March 9, 2016 through the 2016-2017 school year and the current 2017-2018 school year. (UMF # 51.)

### III.   LEGAL STANDARD

Summary judgment against a party is appropriate when the depositions, answers to interrogatories, and admissions on file, together with the affidavits or declarations, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a), (c). The moving party bears the initial burden of establishing the basis for its motion and identifying those portions of the pleadings and discovery responses that demonstrate an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets its initial burden, the nonmoving party must then set forth, by affidavit or as otherwise provided in Fed. R. Civ. P. 56, specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

Upon a showing that there is no genuine dispute of material fact as to particular claim(s) or defense(s), the court may grant summary judgment in the party's favor on "each claim or defense—*or the part of each claim or defense*—on

1   which summary judgment is sought." Fed. R. Civ. P. 56(a) (emphasis added).

2   Moreover, "(i)f the court does not grant all the relief requested by the motion, it may

3   enter an order stating any material fact – including an item of damages or other

4   relief – that is not genuinely in dispute and treating the fact as established in the

5   case." Fed. R. Civ. P. 56(g) (emphasis added).

6   **IV.   ARGUMENT**

7   **A.   UNDISPUTED FACTS SHOW THAT THE DISTRICT FAILED**

8   **TO ENSURE MEANINGFUL ACCESS UNDER THE**

9   **AMERICANS WITH DISABILITIES ACT AND SECTION 504**

10   **OF THE REHABILITATION ACT.**

11   **1.   ADA And Section 504 Prima Facie Case.**

12   In order to prevail on an ADA claim a Plaintiff must show: (1) she is a

13   "qualified individual with a disability"; (2) she was either excluded from

14   participation in or denied the benefits of a public entity's services, programs or

15   activities, or was otherwise discriminated against by the public entity; and (3) such

16   exclusion, denial of benefits, or discrimination was by reason of his disability.

17   *Weinreich v. Los Angeles Cty. Metro. Transp. Auth.*, 114 F.3d 976, 978 (9th Cir.

18   1997); *see also Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002); *Rodde v.*

19   *Bonta*, 357 F.3d 988 (9th Cir. 2004).[3]

20   "The protection afforded by the ADA is characterized as a guarantee of

21   'meaningful access' to government benefits and programs." *Theriault v. Flynn*, 162

22   F.3d 46, 48 (1st Cir. 1998) (*quoting Alexander v. Choate*, 469 U.S. 287, 301

23   (1985)).  In situations such as this, there is a denial of "meaningful access" when (1)

24

25   _____

26   [3] Due to the similarities between the statutes, the Ninth Circuit has held that "there is no
     significant difference in the analysis of rights and obligations created by" the ADA and

27   Section 504. *Vinson v. Thomas*, 288 F.3d 1145, 1152 n. 7 (9th Cir. 2002).

28

persons with disabilities are disproportionately burdened due to their unique needs or (2) the public entity fails to provide reasonable accommodations for disabled persons.

### 2.    Defendant Violated The ADA And Section 504 By Creating A Unique Burden On Plaintiff In Failing To Address Her Disability Related Needs.

A public entity fails to provide meaningful access when it administers a facially neutral program in a manner that uniquely burdens a person with a disability. *See Crowder v. Kitagawa*, 81 F.3d 1480 (9th Cir. 1996). The *Crowder* court recognized that in passing the ADA, Congress intended to address "the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, [and] failure to make modifications to existing facilities and practices." *Id.* at 1483. The Ninth Circuit found that a disparate impact analysis was not appropriate in the context of disability and instead, the Court held that, when examining "discriminatory effects," the inquiry should focus on whether disabled persons were denied "meaningful access" to a public entity's services, programs or activities. *Id.* at 1484 *(citing Alexander*, 469 U.S. at 302); *see also Communities Actively Living Indep. & Free v. City of Los Angeles*, No. CV 09-0287 CBM RZX, 2011 WL 4595993, at *14 (C.D. Cal. Feb. 10, 2011) ("Because individuals with disabilities require special needs, the City disproportionately burdens them through its facially neutral practice of administering its program in a manner that fails to address such needs.")

Applying this analysis, the Court found that the imposition of a 120-day quarantine on carnivorous animals entering Hawaii "burdens visually-impaired persons in a manner different and greater than it burdens others." *Crowder*, 81 F.3d at 1485. The Court explained that because of the unique need for guide dogs among the visually- impaired, such persons cannot leave their dogs in quarantine and enjoy public services (e.g., public transportation) like anyone else. *Id.* at 1484–85. Thus,

meaningful access to the public services provided to others was denied to persons with vision disabilities because the quarantine failed to consider their unique needs. *Id.* at 1485.

Using a similar approach, the Ninth Circuit in *Rodde v. Bonta* upheld a preliminary injunction precluding Los Angeles County from closing a hospital that provided medical care disproportionately required by persons with disabilities and not readily available elsewhere in the County. *Rodde*, 357 F.3d at 998. The Court concluded that the ADA did not altogether prohibit closure of the facility, but it did so in these circumstances because the county had no plan for providing medically necessary services to individuals with disabilities elsewhere. *Id.* The Court found that "the evidence suggested ... that the services designed for the general population would not adequately serve the unique needs of the disabled, who therefore would be effectively denied services that the non-disabled continued to receive." *Id.* The Court thus held that closure of the facility would deny individuals with disabilities meaningful access to medical care provided by the County because of their unique needs, while others would retain access to such care. *Id.*

The undisputed facts of this case show that AVUHSD unduly burdened Carlisa Ware's ability to access public education.  AVUHSD clearly did not take adequate steps (such as timely assessment) to make the benefits of education accessible to a nonverbal student with a demonstrated history of needing AAC devices to communicate effectively.  Accordingly, Carlisa Ware is entitled to a finding of liability as a matter of law.

### 3.      Defendant Also Violated The ADA And Section 504 By Failing To Provide Reasonable Accommodations.

Similarly, a public entity fails to provide meaningful access when it fails to

1    provide reasonable accommodations. [4] *See* 28 C.F.R. § 35.130(b)(7).

2         Courts have also held that a failure to provide reasonable accommodations is

3    a stand-alone claim, itself a denial of meaningful access. *See Alexander*, 469 U.S. at

4    301 ("to assure meaningful access, reasonable accommodations in the grantee's

5    program or benefit may have to be made."). Failure to provide a reasonable

6    accommodation is actionable discrimination under the ADA "because the ADA not

7    only protects against disparate treatment, it also creates an affirmative duty in some

8    circumstances to provide special, preferred treatment, or 'reasonable

9    accommodation.'" *Dunlap v. Ass'n of Bay Area Governments*, 996 F. Supp. 962, 965

10   (N.D. Cal. 1998).  Indeed, [t]he purpose of the ADA's reasonable accommodation

11   requirement is to guard against the facade of "equal treatment" when particular

12   accommodations are necessary to level the playing field." *McGary v. City of*

13   *Portland*, 386 F.3d 1259, 1267 (9th Cir. 2004); *see also Presta v. Peninsula*

14   *Corridor Joint Powers Bd.*, 16 F. Supp. 2d 1134, 1136 (N.D. Cal. 1998) ("[i]n the

15   context of disability ... equal treatment may not beget equality").

16        Unlike *Crowder* and *Rodde,* the reasonable accommodation analysis is not

17   based on a comparative approach. In *McGary*, 386 F.3d 1259*,* the Ninth Circuit held

18   that "[a] plaintiff need not allege either disparate treatment or disparate impact in

19   order to state a reasonable accommodation claim." *McGary*, 386 F.3d at 1266; *see*

20   *also Henrietta D. v. Bloomberg,* 331F.3d 261, 276-77 (2d Cir. 2003) ("[A] claim of

21   discrimination based on a failure reasonably to accommodate is distinct from a

22   claim of discrimination based on disparate impact."). Citing to the Supreme Court's

23   holding in *Olmstead,* the Ninth Circuit further explained that a reasonable

24

25   [4] Although Title II of the ADA uses the term "reasonable modification," rather than

26   "reasonable accommodation," these terms create identical standards. *See Wong v.*
     *Regents of Univ. of California*, 192 F.3d 807, 816 n. 26 (9th Cir. 1999). Thus, these

27   terms are used  interchangeably.

28

accommodation claim need not include a "comparison class" that was treated differently. *McGary*, 386 F.3d at 1266 *(citing Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 598 (1999))*.

Specifically, the *McGary* Court found that Portland discriminated against McGary by failing to reasonably accommodate his disability when it refused to grant him additional time to comply with a nuisance abatement ordinance. The Ninth Circuit rejected the district court's finding that in order for McGary to allege that he was discriminated against because of his disability, he must demonstrate that a non-disabled neighbor also in violation of the ordinance was given an extension of time. Moreover, as the Ninth Circuit has made clear, that upon receipt of a request for an accommodation, the public entity "is required to undertake a fact-specific investigation to determine what constitutes a reasonable accommodation." *Duvall v. Cty. of Kitsap*, 260 F.3d 1124, 1139 (9th Cir. 2001).

As noted above, the District failed to provide the proper accommodation to Carlisa.  Clearly, staff was on notice of Plaintiff's specific disabilities and was keenly aware that Carlisa was non-verbal and could not communicate without assistive technology.

Alarmingly, the high school staff disregarded these issues, failing to provide the proper assessment and denying her the required communicative devices.

### 4.    The Meaningful Access Standard Imposes Affirmative Obligations On Defendant To Act.

When faced with a student such as Carlisa who has well documented communication deficits, a District cannot sit back and wait for the years to go by. Under either the unique burden or reasonable accommodation analysis, the District has affirmative obligations to avoid discrimination against its students with disabilities. *See Parker v. Universidad de Puerto Rico*, 225 F.3d 1, 8 (1st Cir. 2000) (public university "must act affirmatively to eliminate barriers on the premises that would otherwise serve to deny persons with disabilities access to services, programs,

1  or activities"); *see also Henrietta D. v. Bloomberg*, 331 F.3d 261, 274–75 (2d Cir.

2  2003) (ADA and Rehabilitation Act require "affirmative accommodations" and

3  "'some degree of positive effort to expand the availability'" of programs to people

4  with disabilities (quoting *Dopico v. Goldschmidt*, 687 F.2d 644, 653 n.6 (2d Cir.

5  1982) (some quotation marks omitted); *Wisconsin Cmty. Servs., Inc. v. City of

6  Milwaukee*, 465 F.3d 737, 753 (7th Cir. 2006) (requiring public entities to modify

7  their policies when needed, "clearly contemplates that prophylactic steps must be

8  taken to avoid discrimination"); *Delano-Pyle v. Victoria Cty., Tex.*, 302 F.3d 567,

9  575 (5th Cir. 2002) ("A plain reading of the ADA evidences that Congress intended

10 to impose an affirmative duty on public entities to create policies or procedures to

11 prevent discrimination based on disability."); 2011 WL 4595993, at *14 (public

12 entities are required to affirmatively anticipate the needs of persons with disabilities

13 in planning and implementing their programs and services, rather than relying on *ad

14 hoc* solutions).

15        Moreover, because Carlisa's communication assistance needs here were

16 obvious, there was no need for an actual request from her in order to trigger the need

17 for accommodations or other action. *See, e.g., Kiman v. New Hampshire Dep't of

18 Corr.*, 451 F.3d 274, 283 (1st Cir. 2006) (noting, in a Title II case that "sometimes

19 the person's [disability and concomitant] need for an accommodation will be

20 obvious; and in such cases, different rules may apply" (alteration, quotation, and

21 citation omitted)); *Duvall*, 260 F.3d at 1139 ("When the plaintiff has alerted the

22 public entity to his need for accommodation (or *where the need for accommodation

23 is obvious,* or required by statute or regulation), the public entity is on notice that an

24 accommodation is required . . . ." (emphasis added); *cf. Reed v. LePage Bakeries,

25 Inc.*, 244 F.3d 254, 261 n.7 (1st Cir. 2001) (noting, in Title I case, that a request for

26 an accommodation may not be required when the disabled individual's needs are

27 "obvious").

28        Thus, even had Carlisa's IEP's outlining her communication issues had not

1  been well-documented and admitted to by the District, the latter would still have an
2  obligation to accommodate her once it was on notice of her obvious disability.

3           **B.     DEFENDANT FAILED AS A MATTER OF LAW TO PROVIDE**
4                **CARLISA WITH EFFECTIVE COMMUNICATIONS.**

5           The inquiry into "meaningful access" is "guided by the relevant regulations
6  interpreting Title II." *K.M. ex rel. Bright v. Tustin Unified Sch. Dist.*, 725 F.3d 1088,
7  1102 (9th Cir. 2013). At issue in this case are the effective communications
8  regulation. 28 C.F.R. § 35.160.

9           The effective communications regulation has two components. First, a public
10 entity must "take appropriate steps to ensure that communications with applicants,
11 participants, members of the public, and companions with disabilities are as
12 effective as communications with others." 28 C.F.R. § 35.160(a)(1). Second, a
13 public entity must "furnish appropriate auxiliary aids and services where necessary
14 to afford individuals with disabilities, including applicants, participants,
15 companions, and members of the public, an equal opportunity to participate in, and
16 enjoy the benefits of, a service, program, or activity of a public entity." 28 C.F.R. §
17 35.160(b)(1).

18          AVUHSD failed as a matter of law to take appropriate steps to ensure that its
19 communication with Carlisa was as effective with other students who do not suffer
20 from her communication difficulties.  AVUHSD did not honor defendant Garver's
21 request that defendant assess Carlisa for a communications device in March 2012.
22 Moreover, Garver testified that communication with Carlisa was not effective even
23 though she was provided with a PECS book.  AVUHSD did not honor defendant
24 Garver's request that the AVUHSD provide Carlisa with a communications device
25 in March 2014, either.  When the district received Carlisa's counsel's request for a
26 communications assessment on December 11, 2014, it had no reason to disagree
27 with that request.  Thus, Plaintiff is entitled to a finding of liability as a matter of
28 law with respect to the first prong of the effective communications standard because

1    AVUHSD clearly did not take the necessary steps to achieve effective

2    communication with Carlisa Ware from her entry into high school in September

3    2011 until her assessment by Goodwill of Orange County in May 2015.

4        Nor can AVUHSD claim a lack of knowledge of the need for prompt

5    assessment: "[M]ere speculation that a suggested accommodation is not feasible

6    falls short of the reasonable accommodation requirement; [the Rehabilitation Act]

7    create[s] a duty to gather sufficient information from the disabled individual and

8    qualified experts as needed to determine what accommodations are necessary."

9    *Duvall*, 260 F.3d at 1136 (internal quotation marks omitted).  Thus, it is

10   immediately obvious that AVUHSD failed to take appropriate steps to provide

11   Carlisa with effective communication.  Summary adjudication is therefore

12   appropriate as a matter of law.

13       AVUHSD failed as a matter of law to furnish Carlisa with the proper

14   communication device.  Indeed, AVUHSD did not provide Carlisa with the

15   requested communications device until March 9, 2016.  (UMF # 47.) Thus,

16   defendant failed to provide effective communication for Carlisa beginning from  (1)

17   when defendant Garver suggested that Carlisa be assessed for a communication

18   device in connection with her March 26, 2012 IEP, (2) when defendant Garver

19   requested that AVUHSD provide Carlisa with a communication device in

20   connection with her February 21, 2014 IEP, (3) when Carlisa's counsel requested a

21   communications assessment and appropriate communications device on December

22   11, 2014, (4) when the AVUHSD Board approved vendor – Goodwill of Orange

23   County – provided its assessment attesting to Carlisa's need for the communications

24   device on May 26, 2015.  Accordingly, Plaintiff is entitled to a finding of liability as

25   a matter of law with respect to the second prong of the effective communication

26   standard.

27   ///

28   ///

**C.      DEFENDANT CANNOT CLAIM UNDUE BURDEN OR FUNDAMENTAL ALTERATION, BECAUSE THAT DEFENSE WAS NOT PLEADED AS AN AFFIRMATIVE DEFENSE.**

Defendant here did not plead the undue burden or fundamental alteration affirmative defense to Plaintiff's claims and has thus waived those defenses. (*See* Defendant's Second Amended Answer, Docket # 73.) Fed. R. Civ. P. 8(c) provides that "[i]n responding to a pleading, a party must affirmatively state any affirmative defense." The contention that a requested accommodation constitutes a fundamental alteration or would impose an undue hardship is an affirmative defense. *See* 28 C.F.R. § 35.130(b)(7) (identifying undue burden and fundamental alteration defenses); *Am. Council of the Blind v. Paulson*, 525 F.3d 1256, 1266 (D.C. Cir. 2008); *Henrietta D.*, 331 F.3d at 281 (defendant must show that requested accommodation is unreasonable); *cf. Lentini v. California Ctr. for the Arts, Escondido*, 370 F.3d 837, 845 (9th Cir. 2004) (fundamental alternation also an affirmative defense under Title III of the ADA); and *Brooklyn Ctr. for Indep. of Disabled v. Bloomberg*, 980 F. Supp. 2d 588, 657 (S.D.N.Y. 2013) (need not plead if no specific accommodation requested).   Moreover, as noted above, defendant did not claim that either assessing Carlisa for an AAC device, nor providing her with one, constituted an undue hardship.

**D.      THE DISTRICT'S CONDUCT MEETS THE STANDARD FOR DELIBERATE INDIFFERENCE SUFFICIENT TO WARRANT DAMAGES.**

For purposes of damages *directly* under the ADA or Section 504, the District is liable for damages if it acted with "deliberate indifference." *See Duvall*, 260 F.3d at 1138; *Mark H. v. Lemahieu*, 513 F.3d 922, 937– 38 (9th Cir. 2008); *Cohen v. City of Culver City*, 754 F.3d 690, 696 n. 6 (9th Cir. 2014).

The District acted with deliberate indifference if it (1) "[had] knowledge that a harm to a federally protected right is substantially likely," and (2) "fail[ed] to act

upon that likelihood." *Lovell*, 303 F.3d at 1056; *see also Duvall*, 260 F.3d at 1139 (deliberate indifference requires both "some form of notice ... and the opportunity to conform to [statutory] dictates") (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 395 (1989) (O'Connor, J., concurring)).

"When the plaintiff has alerted the public entity to his need for accommodation (*or where the need for accommodation is obvious, or required by statute or regulation*), the public entity is on notice that an accommodation is required, and the plaintiff has satisfied the first element of the deliberate indifference test." *Duvall*, 260 F.3d at 1138 (emphasis added).

As explained above, the District here had an affirmative duty to ensure meaningful access to its programs and ensure that Carlisa was afforded accommodations, and otherwise was on notice regarding Carlisa's needs due to the obvious nature of her disability.  Furthermore, as noted in detail above, AVUHSD failed repeatedly to provide Carlisa with effective communication until March 9, 2016 even after (1) her teacher, defendant Garver requested assessment in March 2012, (2) Garver requested an AAC device for Carlisa in March 2014, (3) Carlisa's counsel requested assessment in December 2014, and (4) after the AVUHSD Board-approved assessment concluded Carlisa would have more effective communication with an AAC device in May 2015.  Summary adjudication is therefore warranted as a matter of law.

## E.   A VIOLATION OF THE ADA CONSTITUTES A VIOLATION OF THE UNRUH CIVIL RIGHTS ACT, WHICH DOES NOT REQUIRE ANY SHOWING OF DELIBERATE INDIFFERENCE.

Finally, any violation of the ADA also constitutes a violation of the Unruh Civil Rights Act. *See* Cal. Civ. Code § 51(f). Public Schools are considered business establishments for purposes of the Act. *See, e.g., Nicole M. By & Through Jacqueline M. v. Martinez Unified Sch. Dist.*, 964 F. Supp. 1369, 1388 (N.D. Cal.

1    1997).

2    Importantly, and in contrast to Plaintiff's claims under the ADA and Section

3    504, there is *no requirement to show deliberate indifference* in order to be liable for

4    damages under an Unruh claim based on a violation of the ADA. *See Cohen*, 754

5    F.3d at 696 n. 6; and *Munson v. Del Taco, Inc.*, 46 Cal. 4th 661 (2009).

6    **V.    CONCLUSION**

7    For the reasons stated above, Plaintiff Carlisa Ware respectfully requests that

8    her motion for summary adjudication on her first, second and third claims for relief

9    be granted in its entirety.

10

11    Dated:  February 16, 2018        RIVERS LAW, INC., APC

12                                     SCHONBRUN SEPLOW
                                       HARRIS & HOFFMAN LLP
13

14                                     By:    */s/ Wilmer J. Harris*

15                                           Wilmer J. Harris
                                             Attorneys for Plaintiff
16

17

18

19

20

21

22

23

24

25

26

27

28